IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JOHN L. JACKSON,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| V. | )   Civil No. **04-798-CJP**[1] |
| | ) |
| **JO ANNE B. BARNHART**[2], | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

## ORDER

Pursuant to 42 U.S.C. § 405(g), plaintiff John L. Jackson, represented by counsel, is before the Court seeking review of the final decision of the Social Security Administration denying him Disability Insurance Benefits pursuant to 42 U.S.C. § 423.  **(Doc. 1).**  In addition to submitting the administrative record **(Doc. 8 hereinafter referred to as "R.")**, plaintiff and defendant have fully briefed their positions.  **(Docs. 16, 19 and 20).**

### Synopsis of the Procedural History and Relevant Facts

In July 2000, plaintiff John L. Jackson applied for Disability Insurance Benefits (DIB). **(R. 72-74).**  Plaintiff was 62 years old at that time, and he had not worked since December 1999, when he retired and/or was laid off after 30 years of government work as a production line supervisor at a munitions plant.  **(*See* R. 33, 70, 82-83 and 99).**  By plaintiff's own admission, he

---

[1]Pursuant to 28 U.S.C. §§ 636(c)(1), with the consent of the parties, this action was transferred to the undersigned magistrate judge for all proceedings and entry of judgment. (*See* Docs. 5, 10 and 11).

[2]Plaintiff's complaint does not refer to the Commissioner of Social Security by name; this Court takes judicial notice that Jo Anne B. Barnhart is the Commissioner.

never looked for work after his prior employment ceased. **(R. 34).** Plaintiff claims he became disabled as of April 6, 2000, when he underwent a quadruple coronary artery bypass graft, after eight months of progressive angina. **(R. 82 and 118-119).** In addition, plaintiff suffered two heart attacks shortly after bypass surgery: the first on April 23, 2000; the second on May 27, 2000. **(R. 169 and 227).** Plaintiff also suffered a third heart attack March 2, 2001. **(R. 319).** Cardiac catheterization March 3, 2001, reconfirmed the April 2000 diagnosis of severe three-vessel coronary artery disease. **(R. 169 and 330).** However, plaintiff is not considered a candidate for angioplasty, so he has since been treated with medicine and a cardiac rehabilitation program. **(R. 374).** In total, plaintiff was hospitalized for 26 days between April 6, 2000 and March 6, 2001; 25 days related to his heart condition and one day for removal of a colon polyp. **(R. 118, 171, 224, 228 and 319).**

According to plaintiff, he is unable to work due to ongoing coronary artery disease and associated fatigue, inability to walk any distance, angina in the form of jaw pain upon exertion[3], chest pain and high blood pressure. **(*See* R. 34-37, 82, 87, 95 and 97).** Plaintiff testified in August 2001 that he tires too easily to maintain work. **(R. 34).** According to plaintiff, since April 2000 he has consistently experienced jaw pain and chest pain upon exertion, for which he uses nitroglycerin spray. **(R. 34-36).** Dr. Cohen's medical notes from July 2000 state that plaintiff uses the spray on an as needed basis, "but [plaintiff] does not really need to use [it]." **(R. 391).** However, In May 2001, Dr. Cohen also advised plaintiff to pay attention to the pain he experiences upon exertion by stopping or slowing down; plaintiff was also told to use the nitroglycerin spray. **(R. 386).** By plaintiff's account, he cannot lift 20 pounds (although he

---

[3]Dr. Jerome Cohen indicates plaintiff's jaw pain is "anginal equivalent pain." **(R. 386).**

testified about lifting his grandchild), and he can walk for only five or six minutes without tiring. **(R. 37-38).** Plaintiff is still able to mow his yard using a riding mower, grocery shop, go to the mall with his wife, and drive, although he must sit and rest or nap after these activities. **(R. 36).** Plaintiff reported that he can no longer do pleasurable activities, such as fishing.[4]

Vocational expert Dr. James Bordieri testified at the August 2001 hearing before the ALJ. Dr. Bordieri characterized plaintiff's past work as light to medium, skilled work, beyond plaintiff's residual functional capacity– apparently because of the strength requirements. **(R. 41-43).** However, plaintiff, a high school graduate with transferrable supervisory skills, was considered capable of light, unskilled work amply available in the regional economy. **(R. 42-43).** The ALJ posed a hypothetical question to Dr. Bordieri regarding whether a person absent 13 days over a 13 month period could maintain such work. **(R. 43).** Bordieri replied:

> [G]enerally, in my opinion, that would be within the tolerance level, if you will, for absenteeism by employers in this line of work. With that rate of absenteeism, I would expect that this hypothetical worker would be able to maintain employment.

**(R. 43).**

Another hypothetical was posed, based on a person who was impaired as plaintiff

---

[4]The parties make much of whether plaintiff went to Florida in November 2000 and fished. ALJ Liberty noted in his decision that plaintiff testified he had not fished in two years, but there was other evidence suggesting plaintiff went on a fishing trip to Florida, which the ALJ cited in support of his conclusion that plaintiff's testimony was not fully credible. **(*Compare* R. 20, R. 38 and R. 294).** Although this issue has not been properly raised before the Court, the Court notes that there is other evidence supporting the ALJ's finding that plaintiff's is not fully credible. For example, plaintiff testified he retired from his job, but he had repeatedly indicated on forms that he had been laid off (***compare*** **R. 33 with R.70 and 82)**; he testified he has had chest pain daily since April 2000, but medical records specifically note the absence of chest pain (***compare*** **R. 35-36 with R. 374)**; and Dr. Cohen intimates that plaintiff is over-reliant upon the nitroglycerin spray prescribed for anginal pain (***compare*** **R. 35 and R. 391)**.

described himself in his testimony. **(R. 44).** Dr. Bordieri opined that such a person would be unable to maintain work due to fatigue and pain experienced upon exertion, and the need to nap after exertion. **(R. 44).**

A final hypothetical was posed regarding whether a person expected to miss 26 days of work during a 13 month period could maintain employment. **(R. 45).** Dr. Bordieri testified about the breaking point for the tolerance for absenteeism:

> Generally, most employers will tolerate anywhere from one to two days per month, especially in factory types of environments. If you have a worker who's missing two days regularly a month and if that pattern of behavior was [sic] to continue, in all likelihood that job would be in jeopardy.

**(R. 45).**

ALJ Liberty concluded plaintiff had the residual functional capacity for a significant range of light work and sedentary work– jobs Dr. Bordieri testified were available in the regional economy. **(R. 21-22 and 23).** Given plaintiff's age, education, work experience and residual functional capacity, plaintiff was found not disabled, in accordance with Medical-Vocational Rule 202.07. **(R. 22 and 23).** The ALJ noted that Dr. Bordieri had testified that being absent from work for 13 days in 13 months due to hospitalization was within the tolerance for employment. **(R. 22).**

Plaintiff's request for review was denied by the Appeals Council on September 3, 2004, making Administrative Law Judge Arthur A. Liberty's decision the final decision of the Commissioner. **(R. 17-24).** Consequently, this matter is subject to review by the District Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**Issues Presented**

Plaintiff's brief raises only a single issue:  whether ALJ Liberty erred by posing and relying on a hypothetical to the vocational expert, Dr. Bordieri, regarding 13 days of absence in 13 months, when the evidence indicates plaintiff was hospitalized for 26 days in a 12 month span.  **(Doc. 16, pp. 4-5).**  Plaintiff also asserts that had he been employed, he would have missed additional days due to recuperation and rehabilitation.  **(Doc. 16, p. 5).**  Plaintiff focuses on Dr. Bordieri's testimony that "most employers will tolerate anywhere from one to two days per month," as opposed to the actual hypothetical posed to Dr. Bordieri, which pertained to a 13 month period.  **(R. 45).**

The defendant Commissioner counters that the vocational expert's specific testimony did not indicate that a person who was absent 13 days in a 13 month span was unemployable; rather, Dr. Bordieri testified such a person was on the breaking point of tolerance and would be in jeopardy of losing his or her job.  **(Doc. 19, p. 9).**   Defendant also stresses that 21 of the 26 days plaintiff was hospitalized fell within a two month span.  **(Doc. 19, p. 10).**  Finally, defendant asserts that plaintiff 's disabling impairment did not last for a continuous period of 12 months, as required by 20 C.F.R. § 404.1509.  **(Doc. 19, p. 10).**

In reply, plaintiff claims ongoing anginal pain in his jaw and chest, as well as fatigue and associated affects, satisfy the 12 month durational requirement.   **(Doc. 20).**  Plaintiff also specifically declines to concede that plaintiff is even capable of light work, casting the bulk of the ALJ's decision into question.  **(Doc. 20, p. 3).**

**The General Scope of Review**

5

The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 1382, et seq., and 20 C.F.R. pt. 404.  This Court reviews the decision denying plaintiff benefits to ensure that the ALJ's decision is supported by substantial evidence, and that no mistakes of law were made.  *See* **42 U.S.C. § 405(g).**  However, it must be noted in this particular situation, only one point of error has been properly raised (regarding the absenteeism hypotheticals), becasue issues raised for the first time in a reply brief are waived.  ***See Hess v. Reg-Ellen Machine Tool Corp.*, 423 F.3d 653, 665 (7th Cir. 2005).**

As a preliminary matter, to be eligible for DIB, a claimant must be disabled during the time he was insured for benefits.  *See* **42 U.S.C. §§ 423(a)(1)(A), (c)(1); 20 C.F.R. § 404.131.**

To qualify for DIB a claimant must be "disabled."  "Disabled" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  **42 U.S.C. § 423(d)(1)(A).**  A "'physical or mental impairment' is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  **42 U.S.C. §§ 423(d)(3).**  "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit.  **20 C.F.R. §§ 404.1572.**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled.  In essence, it must be determined (1) whether the claimant is presently employed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged

to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. ***See Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992);** *see also* **20 C.F.R. §§ 404.1520(b-f).**

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g).** Thus, the Court must determine not whether plaintiff is, in fact, disabled, but whether the ALJ's findings were supported by substantial evidence; and, of course, whether any errors of law were made. ***See Books v. Chater*, 91 F.3d 972, 977-978 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir.1995)).** The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971).**

In reviewing for "substantial evidence" the entire administrative record is taken into consideration, but this Court *does not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. ***Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).** Furthermore, an ALJ may not disregard evidence when there is no contradictory evidence. ***Sample v. Shalala*, 999 F.2d 1138, 1143 (7th Cir. 1993).**

A negative answer at any point in the five step analytical process, other than at the third step, stops the inquiry and leads to a determination that the claimant is not disabled. ***Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).** If a claimant has satisfied steps one and two, he or she will automatically be found disabled if he or she suffers from a listed impairment (step three). If the claimant does not have a listed impairment but cannot perform his or her past work, the

burden shifts to the Secretary at step four to show that the claimant can perform some other job. ***Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir.1984).**

## Analysis

The validity of a vocational expert's testimony "depends on whether the administrative law judge accurately described [the claimant's] condition to him." ***Barrett v. Barnhart,* 355 F.3d 1065, 1067 (7th Cir. 2004).** The hypothetical question must be supported by the evidence in the record. ***Cass v. Shalala*, 8 F.3d 552, 555-556 (7th Cir. 1993).**

In the case at bar, the hypothetical posed by ALJ Liberty regarding an absence of 13 days during a 13 month period **(R. 43)** did not accurately reflect the undisputed evidence that plaintiff was absent 26 days during a 12 month period. Nevertheless, plaintiff's counsel, apparently recognizing the ALJ's misstatement, posed a hypothetical regarding an absence of 26 days during a 13 month period. **(R. 45).** Plaintiff was hospitalized 26 days during a span of 13 months, but for purposes of analysis, the relevant period is really 12 months– the durational requirement for a finding of disability. **See 20 C.F.R. § 404.1509.** In addition, plaintiff's out-patient hospitalization for one day for the removal of a colon polyp is not in any way attributable to his alleged disabling coronary condition. Therefore, the proper hypothetical would have related to 25 days in a span of 12 months. In any event, plaintiff's assertion of error is specious, as there is some evidence in the record to support the conclusion that plaintiff is not disabled due to excessive absenteeism.

Dr. Bordieri testified that a person who was absent 26 days during a 13 month span would be on the breaking point of tolerance and that person's job would be in jeopardy. **(R. 45).** Dr. Bordieri did <u>not</u> testify that 26 absences would make such a person unemployable.

Therefore, 25 absences in a 13 month span would not render a person unemployable, which is an accurate depiction of the evidence. Dr. Bordieri did testify that most employers would tolerate only two days absence per month **(R. 45)**, and plaintiff actually missed an average of just over two days per month using the standard 12 month span. However, Dr. Bordieri also indicated that one's job would be in jeopardy "*if* that pattern of behavior was [sic] to continue." **(R. 45 (emphasis added)).** No such pattern existed in plaintiff's situation; the truth be told, plaintiff was apparently hospitalized for only 25 days during the 16 month period running through when he testified before ALJ Liberty in August 2001.

In plaintiff's situation, he was hospitalized 21 of 25 days during a two month period, which would reasonably be expected in a situation where one has an acute health crisis. When plaintiff underwent tests six months post-bypass he was considered to have "fair exercise tolerance" and an "adequate blood pressure response, although he had a submaximal treadmill test for someone his age and he experienced fatigue after seven and a half minutes. **(R. 265).** At that same time, his hypertension was considered under control with medication. **(R. 261).** Dr. Cohen did not see any need to see plaintiff for another six months, and no restrictions were placed on plaintiff's activities.[5] **(R. 390).** Plaintiff's third heart attack in March 2001– 11 months after the onset of his disabling condition– was certainly not anticipated by plaintiff's physician. Medical notes reflect that plaintiff was anxious about his heart condition, which was thought to be contributing to plaintiff's elevated blood pressure, but Ativan was prescribed to alleviate the problem. **(R. 376).** Therefore, defendant's argument that plaintiff's disability did

---

[5] Whether plaintiff was or was not able to fish in Florida at this time is immaterial because there is insufficient non-hearsay evidence in the record on that issue.

not last the required 12 month period is well taken.  In any event, the ALJ's inaccurate reference to absenteeism of 13 days in 13 months is not fatal to the ultimate disability determination because Dr. Bordieri's testimony adequately addressed the 25 days in 12 and/or 13 month scenario.   No other errors have been properly raised by plaintiff, and the Court's review of the evidence, summarized above, adequately supports the conclusion that plaintiff did not meet the criteria for Disability Insurance Benefits because he had the residual functional capacity for a significant range of light work and Medical-Vocational Rule 202.07 dictated finding plaintiff not disabled.

**IT IS THEREFORE ORDERED** that, for the aforestated reasons, the Commissioner's decision denying plaintiff John L. Jackson's application for Disability Insurance Benefits (or a Period of Disability) should be affirmed in all respects.  Judgment shall enter accordingly.

**DATED: March 8, 2006**

  **s/ Clifford J. Proud**
  **CLIFFORD J. PROUD**
  **U. S. MAGISTRATE JUDGE**